

IN THE UNTIED STATES DISTRICT COURT
EASTERN DISTRICT ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA  PLAINTIFF

VS.  Case No. 4:21CR00018BRW

JEMEL FOSTER  DEFENDANT

## BRIEF IN SUPPORT OF MOTION UNDER 28 U.S.C. §2255 TO VACATE, SET ASIDE OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY

Comes now the Defendant, Jemel Foster, by and though counsel, and in support of his Motion under 28 U.S.C. 2255, states:

## STANDARD OF REVIEW

This case comes to the Court on collateral review of a Sixth Amendment trial error that was not raised at trial or on direct appeal. Because of the magnitude of the error and its probable effects on the trial process, it should be viewed as structural error. Although the 6th Amendment claim is being raised in the context of an ineffective assistance of counsel claim, the standard of review is whether counsel's errors were of the sort that rendered Mr. Foster's trial fundamentally unfair. *Marcyniuk vs. Payne*, 39 F. 4th 988 (July 8, 2022); *See Also Weaver v. Massachusetts*, 137 S.Ct. 1899 1910 (2017). The court may also grant Mr. Foster a new trial if it finds that the jury's verdict is unreliable. *See Andres v. United States*, 333 U.S. 740, 748 (1948

## BACKGROUND FACTS

On February 3, 2021, the defendant, Jemel Foster (who is African American) was charged in the United States District Court, Eastern District of Arkansas, Central Division with *inter alia* violating 21 U.S.C. Section 841(a)(1) and 841 (b)(1)(C), distribution of a "substance containing a detectable amount of fentanyl" on January 11, 2021 resulting in

death. The evidence at defendant's trial was that Mr. Foster sold a quantity of fentanyl to Kaleigh Walser (who is white) on January 11, 2021 immediately after Ms. Walser was released from a 30-day jail sentence she unexpectedly had to serve in Florida.[1] Ms. Walser unfortunately died after midnight on January 12, 2021 from an apparent fentanyl overdose. These packages were found unopened on Ms. Walser's person during the post mortem examination at the Arkansas State Crime Lab. Mr. Foster was arrested January 12, 2021 when he attempted to make another delivery to DEA agents posing as Ms. Walser. Mr. Foster was found to be in possession of 4 grams of fentanyl that was 96%-4% quinine –fentanyl mixture. The controlled substance found in Mr. Foster's possession and that recovered from the person of Ms. Walser were chemically identical. The toxicology report from the Arkansas State Crime Laboratory confirmed that the substance found in Ms. Walser's blood stream were not a chemical match for those found on her person. There was no other evidence that Ms. Walser used any of the substance she agreed to purchase from Mr. Foster.

In addition to the "specific transaction" evidence about the January 11th deliver from Mr. Foster to Ms. Walser, the government also introduced a multiplicity of evidence that Foster, had a historical and ongoing dealer-purchaser relationship with Walser. Witnesses testified that Mr. Foster was Ms. Walser's "sole source" of fentanyl, and the government introduced text messages and other evidence to establish numerous fentanyl transactions between Mr. Foster and Ms. Walser on various other days.

At the conclusion of Mr. Foster's trial he was found guilty as charged and sentence to 360 months imprisonment

---

[1] An all-white jury was empanelled to hear Mr. Foster's case.

## ARGUMENT

### 1. Improper Jury Instruction

Foster's trial was fundamentally unfair because the jury instructions given by the court without objection from defense counsel restricted the proper deliberative function of the jury. The jury was instructed (Instruction No. 6) that they could consider the uncharged fentanyl transactions "only for the limited purpose of deciding whether Mr. Foster knowingly distributed fentanyl, whether he knowingly possessed and intended to distribute fentanyl, or whether his actions were a product of mistake or accident." (Doc 170 P. 7). This instruction, in effect, prohibited the jury from considering whether Walser's use of those drugs was an intervening or superceding cause that would sever the causal link between the January 11, 2022 drug transaction charged in the indictment and Walser's ultimate demise. Instruction No. 6 did not adequately explain the factual level of causation (proximate cause) required by the United States Supreme Court's decision in *Burrage v. United States,* 571 U.S. 204 (2014).(But for cause is the "minimum requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result. *Id.* (quoting *University of Tex. Southwestern Medical Center v. Nassar,* 570 U.S. --, --, (2013) (slip op., at 5-6)

Instruction No. 10, instructed the jury further that "[t]he prosecution must prove, beyond a reasonable doubt, that the use of the particular substance was either a "but for" cause or an "independently sufficient" cause of death. The Prosecution need not prove both alternatives either is sufficient." (Doc. 170, P 11). Under the set of facts presented in Mr. Foster's case, the government had the burden of proving that the January 11, 2022 transaction was both the actual cause and the legal cause of Walser's death. *Id.*

## 2. Violation of 5th Amendment Right –Double Jeopardy

In addition to the unfairness caused by the restriction of the jury function, the government's use of uncharged transactions as a basis for conviction violated Mr. Foster's right under double jeopardy clause of the Fifth Amendment. Because the transactions were not charged in the indictment and the constituted separate offenses under the law, Mr. Foster would remain in future jeopardy for prosecution of those crimes, even if he had been acquitted of the offense charged.

## 3. Non-Unanimous Verdict

Finally, a trial is fundamentally unfair when it results in an ambiguous or non-unanimous verdict. Because a general verdict form was used in this case, there is no way to tell whether some of the jurors based their decision to apply the death enhancement under 28 U.S.C. 841 (b)(1)(C) on their belief that, immediately before her death, Ms. Walser had used fentanyl she had purchased from Foster that she had hidden in her mother's home or some other place.[2] Foster was entitled to a unanimous verdict on" all issues—character or degree of the crime, guilt and punishment—which are left to the jury. A verdict embodies in a single finding the conclusions by the jury upon all the questions submitted to it. There is no way to tell whether the jurors were unanimous on their conclusion that Walser died as a result of using fentanyl she purchased from Mr. Foster on January 11, 2022. This type unanimity is a bedrock and essential element of the 6th Amendment trial by jury. *Andres v. United States*, 333 U.S. 740, 748 (1948); *Apodoca v. Oregon,* 406 U.S. 404 (1972); *Ramos v. Louisiana,* 590 U.S. 83 (2020). The ambiguity and lack

---

[2] The Eighth Circuit noted in its opinion affirming Foster's conviction that "[b}ecause Walser only had one source of drugs, even if there was fentanyl hidden in Walser's suitcase or in Coleman's home, the jury could have permissibly concluded that it came from foster. (8th Cir. Op. P. 9).

of unanimity in the verdict, standing alone, should be considered a structural error that entitles Mr. Foster to a new trial because it is an essential and indispensible feature of the Sixth Amendment jury trial right. *Weaver v. Massachusetts*, 137 S.Ct. 1899, 582 U.S. 286 (2017)

## CONCLUSION

Mr. Foster received a jury trial, he did not receive the protections that goes along with that right. He can demonstrate that he was denied effective assistance of counsel, that his trial was fundamentally unfair, and that the result of his trial is unreliable. He can also demonstrate a reasonable probability that the outcome of his trial would have been different if not for structural errors that permeated his trial. As a result the Court should set aside Mr. Foster's conviction and grant him a new trial.

DATE: January 23, 2025

Respectfully submitted

By: *Danny R. Williams*
Danny R. Williams
ABN 93148
Attorney for Plaintiff
323 Center Street, Suite 1205
Little Rock, AR 72201
501-413-5714
Dwilliamslaw.pi@gmail.com